IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

MICHAEL ARNETT                                                                                          PLAINTIFF

v.                                          CASE NO.: 6:09–cv-06058

SHERIFF DAVID TURNER *et al.*                                                                DEFENDANTS

**MEMORANDUM ORDER AND OPINION**

Michael Arnett, currently an inmate in the Varner Unit of the Arkansas Department of Correction, in Grady, Arkansas, filed this civil rights action under 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636 (c), this case is before the undersigned on consent of the parties. ECF No. 14. Now before the Court is Defendants' Motion for Summary Judgment. ECF No. 31. The Court has also reviewed and considered the Memorandum Brief in support of the motion, ECF No. 32, the Statement of Facts as presented by Defendants, ECF No. 33, as well as the two responses filed by Plaintiff, ECF Nos. 47 and 48.

**I.      Facts Presented**

As this case is before the Court on a Motion for Summary Judgment, the Court will state the facts as presented by the non-moving party, the Plaintiff. On October 31, 2006, Plaintiff was booked into the Clark County Detention Center. ECF No. 48. Plaintiff alleges that during his time at the Detention Center he was subjected to racial discrimination, malnourishment, unconstitutional conditions of confinement, and that the Defendants failed to protect him from other inmates. *Id.* Plaintiff also makes official-capacity claims that Defendants had the following unconstitutional policies:

- cruel and unusual punishment;
- racial discrimination;
- denial of medical care;

- untrained officers;
- understaffing of officers;
- lock-down policy which denied showers and cell cleaning;
- denial of yard call;
- denial of food as punishment; and
- racial discrimination.

*Id.*

Specifically, Plaintiff states that on or around January 20, 2007, he was in a fight with other inmates. *Id.* On January 19, 2007, Plaintiff had filed a grievance stating he feared harm from other inmates, and stated that he had some injuries that required medical attention because he had been harmed by other inmates. *Id.* Plaintiff also stated this was the second time such an incident had occurred. ECF No. 48; ECF No. 32, Ex. G. A medical report was filed, dated January 20, 2007, stating that Plaintiff had a lip and scalp laceration, which was treated on that date, and sutures needed to be removed in one week. ECF No. 32, Ex. J. Plaintiff states he was delayed over twenty-four hours in receiving this medical care. ECF No. 48. On January 21, 2007, Plaintiff filed another grievance, stating that he had been in an altercation the night before, presumably January 20, 2007, and was in need of medical care. *Id.*; ECF No. 32, Ex. H. On January 22, 2007, Plaintiff was moved to B-Block for protection. ECF No. 48.

According to Plaintiff, the January 20, 2007 incident occurred because Plaintiff would not let the other inmates smoke in his room, and "they got mad." *Id.* While those inmates told Defendant Newburn the incident was related to a magazine, which was taken, Plaintiff states there was no magazine and the incident was related only to his request that they quit smoking in his room. *Id.*

On June 10, 2009, Plaintiff alleges he was again harmed by other inmates in the jail. Plaintiff states that he was given verbal threats, which he conveyed to the Defendants, before the incident.

However, the inmates who threatened Plaintiff were not the inmates who actually injured him on June 10, 2009. *Id.* Plaintiff had alerted Defendant Loy about "trouble" those inmates were "causing in the block" but Plaintiff does not state he ever received any threats from those inmates before they injured him. *Id.* According to Plaintiff, these inmates had threatened other inmates with shanks. ECF No. 48. On June 10, Plaintiff's cellmate was visiting another inmate in another cell, when the inmates came into the cell and started "beating up" Plaintiff's cellmate. *Id.* Plaintiff's cellmate got free and came into their cell to wake up Plaintiff and tell Plaintiff what had happened. *Id.* The inmates who were causing the injuries tried to enter the cell, but Plaintiff's cellmate began fighting them at the door and the fight spilled into the dayroom. *Id.* Plaintiff and some other inmates tried to break up the fight, and in the ensuing fight, Plaintiff was injured. *Id.* Plaintiff states the fight lasted five to ten minutes, and there was no guard in the booth to monitor the inmates during this time. ECF No. 48. Because of the two instances alleged by Plaintiff[1], he states he has had a total of 20 stitches and six to seven staples during his 32 month incarceration in Clark County. *Id.*

Plaintiff further alleges he was subjected to racial discrimination, as he was a Caucasian who was charged with murder of an African American. *Id.* Plaintiff alleges Defendant Newburn and non-party Ruby Moody[2] discriminated against him because of his race. *Id.* Plaintiff alleges that due to

---

[1] Plaintiff states in his response to the Motion for Summary Judgment that there were three instances of being injured by other inmates, but does not give any other dates other than January 20, 2007, and June 10, 2009. ECF No. 48. Plaintiff states the other dates would be available via medical records, but does not provide those records to the Court. *Id.* The Court also notes that in his Complaint, ECF No. 1, at 4, Plaintiff states that the June 10, 2009 incident is "the second time an incident like this happened." Accordingly, the Court will not address any alleged failure to protect by Defendants beyond the January 20, 2007, and June 10, 2009, allegations as no other date has been alleged by Plaintiff.

[2] Plaintiff previously named Rubin Mood as a defendant, but this individual was unable to be located by the United States Marshal's Service. Plaintiff was given thirty days to file a Motion for Service stating the full name and service address of this defendant but did not file any such motion. ECF No. 28. Accordingly, the defendant named as Rubin Mood was dismissed from this case on May 6, 2011. ECF No. 40.

this racial discrimination, he was placed on lockdown for two to three days at a time and verbal racial slurs were directed against him by Newburn. *Id.* Plaintiff also alleges that the inmates were "coached" to attack him as an act of "racial hate" from Newburn. ECF No. 48. Further, Plaintiff states he was denied yard call as a "flight risk," but that Defendant Sheriff Turner knew nothing about that limitation, and it was placed on him by Defendant Newburn and was racially motivated. *Id.* Newburn is also alleged to have not given Plaintiff his food on one occasion because he was not "at [his] door quick enough," and another jailer brought his food to him thirty minutes later. *Id.* Newburn is alleged to have delayed his receipt of medical care because of Plaintiff's race, and to have failed to file grievances submitted by Plaintiff. *Id.*

Finally, Plaintiff alleges he lost 29 pounds during his incarceration, due to a lack of adequate calories being provided in his meals. ECF No. 1; ECF No. 48. According to Plaintiff, the jail was trying to save money by cutting back on food for the inmates. ECF No. 48. Plaintiff could give no example of the average food provided to him in a day by the Clark County Detention Center, but stated that it was the same portions as what his son received in kindergarten. *Id.* The booking information showed that Plaintiff weighed 160 pounds on October 31, 2006, the date of his entry into the Clark County Facility. ECF No. 32, Ex. C. Plaintiff states this weight is not accurate as he was not weighed on a scale, nor was he asked his weight. ECF No. 48. Plaintiff agrees that on January 30, 2009, during a medical visit, a scale was used to measure his weight at 172 pounds. *Id.* Plaintiff does agree the Arkansas Department of Correction booking sheet, dated August 20, 2009, shows that he weighed 163 pounds upon receipt at the ADC, and agrees that his weight was measured by a scale, at that time. *Id.*; ECF No. 32, Ex. D. Plaintiff states he was at times delayed food by a non-party, but that he was never denied food. ECF No. 48.

Plaintiff also alleges the plumbing did not work and some of the cells he stayed in did not have any running water at all. *Id.* Further, when an inmate would flush a toilet in one cell, waste could back up in another cell. *Id.* Plaintiff made no response upon inquiry, as to how he was harmed by the plumbing issues alleged to exist in the jail. *Id.*

According to Plaintiff, black mold grew in the showers, and Plaintiff stated he was harmed by that mold because "any long exposure can produce substantial health risks." *Id.* Plaintiff stated he had no access to cleaning supplies, as they were brought in at the convenience of the jail and staff, and would be brought in at night or in the morning, and could contain dirty water. ECF No. 48. Inmates might also have a two to three day delay before being able to clean. ECF No. 48.

## II. Applicable Law

Summary judgment is proper if, after viewing the evidence in the light most favorable to the non-nonmoving party, no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Nelson v. Corr. Med. Servs.*, 533 F.3d 958, 961 (8th Cir. 2008). Plaintiff cannot survive the motion for summary judgment merely by pointing to disputed facts; the facts in dispute must be material to the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1985). If the facts alleged by Plaintiff, when viewed in the light most favorable to his case, would not allow a reasonable jury to find in his favor, then summary judgment should be granted in favor of Defendants. *Bloom v. Metro Heart Group of St. Louis, Inc.*, 440 F.3d 1025, 1029 (8th Cir. 2006).

## III. Discussion

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States.

In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that the defendant acted under color of state law and that he violated a right secured by the Constitution. *West v. Atkins*, 487 U.S. 42 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir. 1999). The deprivation must be intentional; mere negligence will not suffice to state a claim for deprivation of a constitutional right under § 1983. *Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344 (1986).

Under § 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a defendant in both his individual and his official capacities. In *Gorman v. Bartch*, 152 F.3d 907 (8th Cir. 1998), the Eighth Circuit discussed the distinction between individual and official capacity suits. As explained by the *Gorman* case:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available. *See Hafer v. Melo*, 502 U.S. 21 (1991). Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself. *Id.* 502 U.S. at 24-27 (1991). Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense. *Id.* 502 U.S. at 25-27.

*Gorman*, 152 F.3d at 914. Plaintiff brings both official and individual capacity claims in this Section 1983 action. The Court will address each type of claim in turn.

### A. Official Capacity Claims

As noted above, official capacity claims are the equivalent of claims asserted against Clark County. Under § 1983, a governmental entity may not be held vicariously liable for the unconstitutional acts of employees. However, a governmental entity may be held liable for the

unconstitutional acts of its officials or employees when those acts implement or execute an unconstitutional policy or custom. *Doe v. Washington County*, 150 F.3d 920, 922 (8th Cir.1998).

Thus, Clark County would be liable for the Defendants' conduct only if it had a policy or custom that caused Plaintiff's injury. *See Board of County Comm'rs v. Brown*, 520 U.S. 397 (1997). In the absence of a written policy, a plaintiff must identify a pattern of widespread unconstitutional conduct that was so pervasive and well-settled that it had the effect of law. *See Jane Doe A v. Special Sch. Dist. of St. Louis County*, 901 F.2d 642, 646 (8th Cir. 1990). Plaintiff must show that Clark County "through its deliberate conduct . . . was the 'moving force' behind the injury alleged." *Brown*, 520 U.S. at 404.

"[I]naction or laxness can constitute government custom if it is permanent and well settled." *Tilson v. Forrest City Police Dept.*, 28 F.3d 802, 807 (8th Cir. 1994) (citation omitted). "Such a government custom of laxness or inaction must be the moving force behind the constitutional violation." *Id.* A governmental body may also be held accountable based on a failure to train and supervise adequately under certain circumstances. *City of Canton v. Harris*, 489 U.S. 378 (1989).

In this case, Plaintiff maintains Defendants had a policy of cruel and unusual punishment, which included: locking down the entire jail for weeks at a time and not allowing showers or cell cleaning during this time; allowing only five minute showers three days a week; not providing adequate cleaning supplies; not being allowed to go out for yard call; being denied food as a form of punishment; not having running water in the cells; not having adequate night-time lighting; and not having enough jailers on duty. Further, Plaintiff maintains Clark County had a policy of racial discrimination in the form of using racial slurs, had untrained officers, and had a policy of providing

poor to no medical treatment. Finally, Plaintiff seeks punitive damages and compensatory damages from each of the Defendants for his official capacity claims.

First, punitive damages are, of course, not available against a governmental entity. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Second, in this case Plaintiff maintains several issues he faced while in Clark County jail, but identifies no policy or procedure that was the moving force behind the alleged constitutional violations. For example, Plaintiff states there were untrained officers and a shortage of officer staffing but provides no evidence regarding any policy or procedure followed by Clark County for training or officer staffing. There is no evidence of the ratio of officers to inmates, or how many officers were working a given shift. In short, Plaintiff provides no existence of any policy or custom on the part of Clark County, and does not allege any facts supporting the existence of such a policy or custom, to support his conclusory list of wrongs. There is simply nothing from which the Court could conclude a genuine issue of fact exists as to Clark County's liability. Defendants are therefore entitled to summary judgment on the official capacity claims.

### B. Individual Capacity Claims

Plaintiff also makes several individual capacity claims. The Court will address each claim in turn.

### i. Failure to Protect

Plaintiff claims Defendants failed to protect him on January 20, 2007, and June 10, 2009, when he was injured by other inmates in the Clark County Jail. Due process "'protects pretrial detainees both from deliberate exposure to violence and from failure to protect when prison officials learn of a strong likelihood that a prisoner will be assaulted.'" *Anderson v. Gutschenritter*, 836 F.2d

346, 349 (7th Cir.1988) (*quoting Matzker v. Herr*, 748 F.2d 1142, 1150 (7th Cir. 1984)). Similarly, the Eighth Amendment imposes a duty on the part of prison officials to protect convicted prisoners from violence at the hands of other prisoners. *See e.g., Perkins v. Grimes*, 161 F.3d 1127, 1129 (8th Cir. 1998). In addressing failure to protect claims brought by pretrial detainees, the United States Court of Appeals for the Eighth Circuit has noted that pretrial detainees are entitled to at least as much protection as a convicted inmate and has applied Eighth Amendment analysis to claims brought both by pretrial detainees and convicted prisoners. *See Perkins*, 161 F.3d at 1129-1130; *see also Crow v. Montgomery*, 403 F.3d 598, 600 (8th Cir. 2005) (analyzing a pretrial detainee's failure to protect claim under the same Eighth Amendment analysis used for similar claims brought by convicted prisoners); *Thomas v. Booker*, 784 F.2d 299 (8th Cir. 1986)(same).

In *Riley v. Olk-Long*, 282 F.3d 592 (8th Cir. 2002), the appeals court stated:

> An Eighth Amendment claim for failure to protect is comprised of two elements. First, an "inmate must show that [he] is incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Second, the inmate must establish that the defendant prison official recklessly disregarded that risk. *Jackson v. Everett*, 140 F.3d 1149, 1151 (8th Cir. 1998). "For the purposes of failure to protect claims, it does not matter ... whether a prisoner faces an excessive risk of attack for reasons personal to [him] or because all prisoners in [his] situation face such a risk." *Hott v. Hennepin County, Minn.*, 260 F.3d 901, 906 (8th Cir. 2001)(internal quotations omitted). The question is whether a prison official has a "sufficiently culpable state of mind," meaning that [he] is deliberately indifferent to an inmate's safety. *Farmer*, 511 U.S. at 834 (internal quotation omitted). The prison official's state of mind is measured by a subjective, rather than an objective, standard. *Id.* at 838-39; *see also Jackson*, 140 F.3d at 1152 ("[D]eliberate indifference must be viewed from [defendant's] perspective at the time in question, not with hindsight's perfect vision."). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [he] must also draw the inference." *Farmer*, 511 U.S. at 837.

*Riley*, 282 F.3d at 595; *see also Krein v. Norris*, 309 F.3d 487 (8th Cir. 2002).

Thus, to prevail on his failure to protect claim, Plaintiff must show: (1) that his incarceration posed a substantial risk of serious harm, and (2) the Defendants knew of and disregarded an excessive risk to his safety. *Pagels v. Morrison*, 335 F.3d 736, 740 (8th Cir. 2003). To establish the second component, Plaintiff must show that Defendants acted, or failed to act, with deliberate indifference to his safety. *Id.* Negligence is not sufficient. *Id.* Even if the conduct was unreasonable, this is not enough because "reasonableness is a negligence standard." *Id.* at 742 (internal quotation marks and citation omitted). Plaintiff must have placed the Defendants "on notice" that particular inmates posed a threat of serious injury to him. *Perkins* at 1130. Moreover, Plaintiff must allege "personal involvement" on the part of each individually-named defendant. *See Szabla v. City of Brooklyn Park*, 486 F.3d 385, 397 (8th Cir. 2007) (no *respondeat superior* liability under § 1983, and no liability merely because an official employs the individual who allegedly violated the plaintiff's constitutional rights); *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) ("[A] warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement."); *Mark v. Nix*, 983 F.2d 138, 139-40 (8th Cir. 1993) (section 1983 liability requires some personal involvement or responsibility).

Plaintiff states his injuries on January 20, 2007 were sustained from inmates who grew angry with him when he would not allow them to smoke in his cell. While Plaintiff stated in a grievance dated January 19, 2007, the previous day, that he feared harm from some inmates, there is nothing provided by Plaintiff to show the inmates who actually harmed him were the ones he stated he feared would harm him. Additionally, Plaintiff clearly felt he could stand-up to the inmates who caused him harm, by telling them they could not smoke in his room. Plaintiff indicated he also sent in additional grievances, other than the January 20, 2007 grievance, stating he feared harm, but Plaintiff does not

allege he requested protection in those grievances, or that he identified the inmates who ultimately did cause him harm. There is simply no allegation and no showing the Defendants knew, or should have known, the January 20, 2007 fight was imminent or that Plaintiff was in any risk of harm from the inmates who actually caused him harm on January 20, 2007.

Similar analysis must be given to the June 10, 2009 altercation. While Plaintiff stated he had received threats before this incident, he also stated the inmates who harmed him were not the inmates who made the threats. Plaintiff had generally alerted Defendant Loy about "trouble" the inmates were causing in the cell block. Plaintiff states this altercation occurred when he attempted to break up a fight between his roommate and the other inmates. Plaintiff provides no facts that he was in any way the target of the altercation, rather the facts allege show that he inserted himself into the incident. Again, it was not possible for the Defendants to know Plaintiff would put himself in harm's way by attempting to break-up the fight, and Plaintiff does not allege that to be the case. Despite Plaintiff's warnings about the other inmates causing trouble, those inmates did not come to him and begin an altercation, rather, Plaintiff placed himself into an ongoing fight with other inmates and was harmed as a result. Such facts do not rise to the level of a failure to protect claim.

### ii. Delay of Medical Care

Plaintiff states that as a result of the January 20, 2007 incident, he was delayed medical care for over twenty-four hours. He placed a grievance on January 19, 2007, stating he was injured, and medical records show he was seen in the hospital on January 20, 2007.

The Eighth Amendment's proscription of cruel and unusual punishment obligates prison officials to provide adequate medical care to inmates in their custody. *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976). To succeed with an inadequate medical care claim, a plaintiff must allege and

prove that: (1) he had objectively serious medical needs; and (2) prison officials subjectively knew of, but deliberately disregarded, those serious medical needs. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir.1997). Additionally, the Eighth Circuit has held that a "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995). However, "'Grossly incompetent or inadequate medical care can constitute deliberate indifference, as can a doctor's decision to take an easier and less efficacious course of treatment.'" *Warren v. Fanning*, 950 F.2d 1370, 1373 (8th Cir.1991) (*quoting Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990)).

Plaintiff is essentially making a claim that his medical care was delayed. However, when an inmate alleges that a delay in medical care constitutes a constitutional violation, he must allege, and eventually place in the record, verifying medical evidence establishing the detrimental effect of the delay. *Coleman v. Rahja*, 114 F.3d 778, 784 (8th Cir. 1997). Plaintiff did not allege any detrimental effect of the delay, nor did he indicate that any medical professional had ever told him the delay caused him any harm. Accordingly, Plaintiff cannot maintain a claim for a constitutional violation due to inadequate medical care.

### iii. Racial Discrimination

Plaintiff has alleged he suffered racial discrimination, specifically from Defendant Newburn. This discrimination took the forms of being placed on lockdown, denied yard call, delayed food, having his grievances not be filed, and having other inmates being "coached" to fight him. The Court also notes that Plaintiff only appears to raise these alleged constitutional wrongs in the context of

being the result of racial discrimination, thus, the Court will not analyze them as separate independent claims.

Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from "invidious discrimination based on race." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citation omitted). But, only deliberate discrimination is actionable. *Personnel Administrator v. Feeney*, 442 U.S. 256 (1979); *Washington v. Davis*, 426 U.S. 229, 239-48 (1976). Thus, a claim of race discrimination under the Equal Protection Clause requires a showing of discriminatory intent or purposeful discrimination. *Washington*, 426 U.S. at 239-40; *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987). The heart of an equal protection claim is that similarly situated classes of inmates are treated differently and that this difference in treatment bears no rational relationship to any legitimate penal interest. *Weiler v. Purkett*, 137 F.3d 1047, 1051 (8th Cir. 1998) (*citing Timm v. Gunter*, 917 F.2d 1093, 1103 (8th Cir. 1990).

Here, Plaintiff has not included any facts to support his discrimination claim. He has failed to identify inmates who were treated more favorably or the race of those inmates; and because he has not explained how other inmates were similarly situated, he has not stated a claim for racial discrimination. Moreover, "[p]roof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *City of Cuyahoga Falls v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 194 (2003) (citation and internal quotes omitted). Plaintiff has failed to allege how any of the alleged actions were based upon a discriminatory intent or purpose.

### iv. Denial of Adequate Diet

In this circuit, the Eighth Amendment deliberate indifference standard is applied to all claims of unconstitutional conditions of confinement whether the individual involved is a pretrial detainee

or a convicted inmate. *Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006). The Eighth Amendment's prohibition against cruel and unusual punishment is violated if an inmate is not provided with meals adequate to maintain his health. *See e.g., Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996); *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992) (prisoners have a right to nutritionally adequate food); *Campbell v. Cauthron*, 623 F.2d 503, 508 (8th Cir. 1980) (prisoners are guaranteed a reasonably adequate diet). To prevail on an Eighth Amendment claim, Plaintiff must show the Defendants were deliberately indifferent to his dietary needs. *Wishon*, 978 F.2d at 446.

Merely because the food served is not prepared to an inmate's taste does not implicate the Eighth Amendment. Rather, the Eighth Amendment is only violated if the food provided is inadequate to maintain good health. *See e.g., Burgin v. Nix*, 899 F.2d 733, 734–35 (8th Cir.1990) (inmates do not have a right to be served a particular type of food).

"The deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the 'minimal civilized measure of life's necessities.'" *Talib v. Gilley*, 138 F.3d 211, 214 n. 3 (5th Cir. 1998) (expressing doubt that Talib who missed about fifty meals in five months and lost fifteen pounds met this threshold) (*quoting Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "Whether the deprivation of food falls below this threshold depends on the amount and duration of the deprivation." *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir.1986) (even on a regular permanent basis, two meals a day may be adequate); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (claim that inmate missed eight meals properly dismissed as frivolous); *Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (Eighth Amendment not violated when inmate served only one meal a day for fifteen consecutive days where the one meal was sufficient to maintain normal health).

In this case, Plaintiff has failed to show a genuine issue of material fact exists as to whether his constitutional rights were violated by the diet he was provided while at Clark County. Plaintiff contends he was provided with a diet that caused him to loose 29 pounds, and included portions similar to those provided to child in kindergarten. Although Plaintiff denies generally that the diet was adequate, he has provided nothing other than his vague allegations suggesting that the meals were nutritionally inadequate, including any allegations of what his meals actually consisted of.

Furthermore, Plaintiff stated in his complaint, which was signed by him on June 16, 2009, that he weighed 159 pounds at that time. He also agrees that on January 30, 2009, when he was in the Clark County Jail, a scale was used to accurately weigh him at 172 pounds, and that on August 20, 2009, upon transfer from Clark County to the Arkansas Department of Correction, a scale was used to accurately weigh him at 163 pounds. Thus, it appears from Plaintiff's facts he lost approximately 13 pounds from January to June of 2009, and then gained four pounds from June to August of 2009. Such factors do not establish that Plaintiff's health was suffering from the Clark County Jail diet, and he makes no allegations of diminished health. Thus, summary judgment should be granted regarding his denial of adequate diet claims.

### v. Unconstitutional Conditions of Confinement

Plaintiff claims he suffered unconstitutional conditions of confinement due to poor plumbing of the jail, the presence of black mold, and inadequate cleaning supplies being available. The Supreme Court has clarified that the "Constitution does not mandate comfortable prisons," and that only "extreme deprivations" that deny "the minimal civilized measure of life's necessities are sufficiently grave to form the basis" of a § 1983 claim. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Rhodes v. Chapman*, 452 U.S. 337, 347-49 (1981). Plaintiff must show that Defendants were deliberately

indifferent, that is, that they knew of, and yet disregarded, an excessive risk of harm to plaintiff's health and safety. *Farmer*, 511 U.S. at 827.

First, regarding Plaintiff's claim of inadequate plumbing, Plaintiff, upon inquiry by the court, did not respond that he had any injury from the alleged inadequate plumbing. As such, summary judgement should be granted on his unconstitutional condition of confinement claim regarding inadequate plumbing. Second, regarding the presence of black mold, upon inquiry by the court to the harm he suffered, Plaintiff responded that long exposure could produce health risks. Plaintiff has not alleged or shown how he suffered any health risks or results from the presence of black mold. Accordingly, summary judgment should be granted on his unconstitutional condition of confinement claim regarding the presence of black mold. Third and finally, Plaintiff has alleged there were inadequate cleaning supplies available. However, Plaintiff has failed to identify any harm he suffered as a result of the allegedly unsanitary cells. *See Williams v. Harmon*, 2009 WL 1690735 (E.D. Ark. 2009) (holding that plaintiff's failure to give specific facts related to why the cleaning supplies are inadequate, the condition of his cell, and how he was actually harmed by the alleged denial of adequate cleaning supplies to be critical flaws in a conditions of confinement claim).

### IV. Conclusion

For the forgoing reasons, the Defendants' Motion for Summary Judgment, ECF No. 31, is hereby **GRANTED** in its entirety. The Clerk of Court is hereby also directed to close case no 6:09-cv-06068 at the time this order is entered as the cases have been consolidated by order of the Court. ECF No. 7. A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

It is **FURTHER ORDERED** that all writs issued in connection with the bench trial set for June 20, 2011, ECF Nos. 44, 45, and 46, are hereby **WITHDRAWN**; the subpoena issued for Chad Prince, ECF No. 43, is hereby **QUASHED**; and the bench trial is **CANCELLED**.

The Clerk of Court is **FURTHER DIRECTED** to mail a copy of this Order to Chad Prince, 434 Walker Rd., Amity, Arkansas 71921.

**IT IS SO ORDERED this 16th day of June 2011.**

        /s/ Barry A. Bryant  
        HON. BARRY A. BRYANT  
        U.S. MAGISTRATE JUDGE